UNITED STATES *v.* WILLIAMS CLARKE CO., A/C AMERICAN AGAR AND CHEMICAL CO. (No. 5108)*

United States Court of Customs and Patent Appeals, April 25, 1963

*John W. Douglas*, Assistant Attorney General, *Alan S. Rosenthal*, and *Howard A. Shapiro*, for United States.

*C.A.D. 822.

*Stein & Shostak, Marjorie M. Shostak,* for appellee.

[Oral argument February 4, 1963, by Mr. Shapiro and Miss Shostak]

Before RICH, Acting Chief Judge, SMITH, and ALMOND, Jr., Associate Judges

SMITH, Judge, delivered the opinion of the court:

The Government has appealed from a judgment of the Customs Court, First Division, C.D. 2322, which sustained the importer's protest against the collector's classification of imported scrap agar agar under paragraph 41 of the Tariff Act of 1930, as modified by Presidential Proclamation of December 16, 1947, T.D. 51802. The lower court held that the imported merchandise should have been classified under paragraph 1558 of the 1930 Act, as modified, as "raw or unmanufactured articles not enumerated or provided for * * *."

The applicable paragraphs of the 1930 Act (19 U.S.C. 1001) with which we are concerned, are as follows:

Paragraph 41, as modified by Presidential Proclamation of December 16, 1947, T.D. 51802:

* * * agar agar, pectin, isinglass, and manufactures, wholly or in chief value of gelatin, glue or glue size, 25 per centum ad valorem; * * *

Paragraph 1558, as modified by T.D. 51802:

All raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs) _____ 5% ad val.

Paragraph 1555, as modified by T.D. 51802:

Waste, not specially provided for_____ 7½% ad val.

In its original protest, the importer asserted that the imported merchandise should have been classified alternatively under paragraph 1722 as duty free seaweed, or under paragraph 1558 as modified, either directly or by virtue of the similitude provisions of paragraph 1559 of the 1930 Act. The original protest was amended by timely motion to include the following:

Alternatively, the merchandise is properly dutiable at 7½% ad valorem under Paragraph 1555 as modified by the General Agreement on Tariffs and Trade, T.D. 51802.

One of the assertions made in the Government brief and argued in this appeal is that the Customs Court erred in adopting a classification under paragraph 1558 as modified which was not urged by the importer-appellee at the trial. The Government bases this contention on the opening statement of the importer's counsel which was as follows:

Mr. Kozinn: The merchandise involved in this protest is invoiced as agar-agar scrap which was produced in Gifu, Japan during the years 1948 and 1949. It was classified as agar-agar under Par. 41 of the Tariff Act of 1930. The protest filed alternatively claims free of duty under Par. 1722, which provides for seaweeds, etc., whether crude of [sic] unmanufactured, not specially provided

for. By motion to amend, the further claim is made alternatively that the merchandise is dutiable at 7½% ad valorem under Par. 1555 of the Tariff Act of 1930 as modified by T.D. 51802, as waste, not specially provided for. *The issue therefore being whether or not the merchandise involved is agar-agar or scrap agar-agar or waste.* [Emphasis added.]

The Government's position predicated on this statement is that the importer abandoned its claim on paragraph 1558 and that the Customs Court was in error in considering the classification of the merchandise under this paragraph. ▆▆▆We do not agree with the Government that the above quoted statement of counsel amounts to an abandonment of appellee's right to rely upon all grounds stated in the protest, including paragraph 1558 of the 1930 Act. It is clear that the importer's protest as originally filed indicated that one of the alternative classifications relied upon was under paragraph 1558. This formulates the issues and clearly put counsel for the Government on notice that the importer could be expected to offer proofs at the trial to show that the merchandise should have been classified under any of the alternative paragraphs asserted in the protest. The statement by counsel which is relied upon by the Government does not indicate to us any intent of the importer to abandon any one of these alternative grounds. We think, therefore, the Customs Court properly looked to the protest to determine the paragraphs in issue on the classification of the merchandise. The ground selected by the Customs Court was not withdrawn at the trial.

To evaluate the importer's position it is necessary to understand the manufacturing process which produced the imported agar agar. The Customs Court described it as follows:

There is no serious dispute as to the facts. Agar agar, or agar, as it also seems to be called, is an extract of certain species of seaweeds. There are different processes of manufacture of agar from such seaweeds, but, generally, as in the case of the merchandise at bar, the seaweeds are boiled to extract the agar. Impurities are removed from the seaweed along with the agar, and the water containing the agar and the impurities is then frozen.

The record indicates that the freezing separates the agar from the impurities, the latter being frozen into the water and the agar remaining apart from the ice which is formed. While agar may be in liquid or solid form, apparently the solid form is what results when the agar obtained as described is dried, and that is the form in which the merchandise at bar was imported.

In support of its contention that the imported merchandise is not agar agar but is "waste" under paragraph 1555 *supra* or "raw or unmanufactured articles" under paragraph 1558, *supra*, the importer introduced the testimony of the chief chemist and general manager of the American Agar and Chemical Company. This testimony indicates that the imported merchandise was purchased as scrap agar after it was found by the witness to be "of too low quality in many respects to be salable." According to the testimony, about one-fifth

of the shipment was found to be completely useless and was discarded while the remainder was ground and used as raw material for the further manufacture of agar agar by the importer.

In holding that the imported merchandise was not properly classified as agar agar under paragraph 41, *supra*, the court stated:

> We are of the opinion that the record establishes that the merchandise involved was scrap, resulting from the manufacture of seaweeds into agar, and was not any grade of agar. Its character and use were shown not to be those of agar, and, while it was known and dealt in as scrap agar agar, or agar agar scrap, we think that the term "agar agar," in those denominations, describes the source of the material rather than its basic nature, which is that of scrap or refuse which does not have the attributes or use of merchandise that is commonly or commercially known as agar agar.

The Customs Court, relying upon *Latimer* v. *U.S.*, 223 U.S. 501, held that the imported merchandise was not "waste" as urged by the importer under paragraph 1555 and concluded that the correct classification was under paragraph 1558 as "raw or unmanufactured articles not enumerated or provided for * * *."

We do not agree. Paragraph 41 is an *eo nomine*, not a use, provision. As this court held in *Nootka Packing Co., et al.* v. *United States*, 22 CCPA 464, 466–467, T.D. 47464, ██ an *eo nomine* designation, with no terms of limitation, will ordinarily include all forms of the named article. Stated otherwise, all forms, grades and qualities of the named article are embraced by such a designation. See *United States* v. *Salomon*, 1 CCPA 246, T.D. 31277, and *United States* v. *Page N. Goffigon*, 43 CCPA 172, C.A.D. 625.

██ Since the collector classified the imported merchandise as agar agar under paragraph 41 as amended, the importer has the burden of showing this classification to be incorrect. We do not find sufficient evidence to sustain this burden. Although the importer's testimony indicates that the imported merchandise was so contaminated that it was not fit for use as agar agar by the importer, the testimony fails to establish that the imported agar agar, even though of a "scrap" grade, is not agar agar as the term is used in paragraph 41 of the Tariff Act of 1930 as amended. The testimony indicates that the imported merchandise was purchased as "scrap" agar after it was found by the witness to be "of too low quality in many respects to be salable." Appellant's Exhibit 7, a Letter Rogatory from Kishiro Yamashita, former President of the Japan Agar Manufacturing Company which supplied the imported merchandise to the importers through an intermediate company, states as follows:

> There exists inspector's specifications regarding the degree of contamination. Prices of agar agar are set according to this specification. *In short, such contaminated agar agar are never thrown away;* the quality sets the price so to speak. [Emphasis added.]

\*　　　\*　　　\* .　　　\*　　　\*　　　\*　　　\*

It depends upon the needs of customers. If they do not mind fairly large degree of contamination, they buy such agar at a lower price while agar agar with less contamination is sold at a higher price. Thus, heavily contaminated agar agar is not thrown away but is sold at a low price if customers wish to buy it.

While the above testimony indicates that the imported merchandise was a very low grade of agar agar whose price was commensurate with its quality, it does not establish that the merchandise is not within the *eo nomine* provision for agar agar. The statutory provision in issue does not establish standards of purity and does not contain any use provision. The fact that the imported merchandise was too contaminated for direct use in some fields as agar agar does not change its character. It is still agar agar. The importer's witness testified that "There are probably over 100 uses" for agar agar, some major, some minor. Merely because the contaminated scrap grade of agar agar was unsuited for certain direct uses by the importer does not mean that it was unsuited for all of the possible asserted uses of agar agar nor does it indicate that the imported merchandise is not agar agar. We think the merchandise imported as "scrap agar agar" should be classified as agar agar under paragraph 41 of the 1930 Act as modified.

We do not think the importer has presented evidence sufficient to overcome the burden of showing the collector's classification to be wrong.

For the foregoing reasons, the judgment of the Customs Court is *reversed.*